IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANNY LANCE KOLB                                                      PLAINTIFF

        v.          Civil No. 3:11-cv-03055-PKH-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                      DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**       **Factual and Procedural Background**

Plaintiff, Danny Lance Kolb, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. ch. 7, subch. II, §§ 401-433.

Plaintiff protectively filed his application on October 20, 2008, alleging a disability onset date of June 4, 2008, due to residuals of three separate motorcycle accidents, in which he sustained multiple fractures of his left lower extremity as well as head injuries. Tr. 10. On the alleged onset date, Plaintiff was forty-nine years old with a high school education and some college. Tr. 16, 41, 157. He subsequently turned fifty on May 3, 2009. Tr. 41. He has past work as a waste water treatment plant operator, battery charger, maintenance repairman, and maintenance electrician. Tr. 16, 60, 159-166, 182-189.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 71-73, 75-76. At Plaintiff's request, an administrative hearing was held on December 17, 2009. Tr. 37-66. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered a partially

favorable decision on May 14, 2010, finding Plaintiff was disabled from June 4, 2008, through June 5, 2009, when his medical condition improved. Tr. 6-21. Subsequently, the Appeals Council denied Plaintiff's Request for Review on May 17, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## II.  Medical History

### A.  June 4, 2008 Accident

On June 4, 2008, Plaintiff was involved in a motorcycle accident, in which he sustained a closed fracture of the left femur, a closed fracture of the left distal tibia, a non-displaced left acetabular fracture, mesenteric stranding without significant abdominal free fluid and benign abdominal examination, a right tibial plateau fracture, and a shin laceration. Tr. 239-242, 251-253. An MRI of Plaintiff's left knee revealed a probable high-grade partial tear of the ACL and PCL, a posterolateral tibial plateau bone contusion, a grade II injury of the proximal lateral head of the gastroenemius, a myotendinous injury of the proximal popliteus, possibly grade III, and a large joint effusion. Tr. 254-255. A CT of Plaintiff's head, without contrast, revealed a subtle appearance of a tiny interhemispheric subdural hematoma within the posterior cerebral falx. Tr. 246. A CT of Plaintiff's chest, abdomen, and pelvis revealed bilateral pulmonary contusion, a questionable hepatic injury, an abnormal left side of the pelvis consistent with significant trauma, and a severe left acetabular fracture. Tr. 342-343. CT imaging of Plaintiff's cervical, thoracic, and lumbar spine indicated no fractures. Tr. 343-344.

While hospitalized, Plaintiff underwent surgery consisting of open reduction internal fixation of the left femur with a retrograde interlocking rod and open reduction internal fixation of the left distal tibia with a peri-articular plate, which was performed by Richard A. Seagrave, M.D. Tr. 240-

242, 261-263.  Plaintiff's acetabular fracture was treated conservatively.  Tr. 408.  Following surgery, Plaintiff began physical and occupational therapy.  Tr. 241.  On June 11, 2008, it was felt that Plaintiff was stable enough for discharge.  Tr. 241.  He was instructed to avoid weight-bearing on both legs.  Tr. 241, 265.

Plaintiff saw Dr. Seagrave for follow-up care.  Tr. 403-416.  On June 23, 2008, Plaintiff reported decreased pain and swelling.  Tr. 408.  Dr. Seagrave instructed Plaintiff to continue non-weight-bearing for four weeks on the right side and at least six weeks on the left side and to use a knee immobilizer when transferring.  Tr. 409.  X-ray imaging from July 21, 2008, revealed good hardware positioning in Plaintiff's left femur and ankle, with no evidence of loosening.  Tr. 415.  X-rays of Plaintiff's right knee revealed no evidence of fracture, but mild degenerative changes.  Tr. 415.  Brian Aston, MS, noted that the occult tibial plateau fracture was not visualized and was likely well healed.  Tr. 415.  Dr. Seagrave released Plaintiff for weight-bearing as tolerated on the right side, and stated Plaintiff could begin touchdown weight-bearing on the left and could progress to partial weight-bearing in two weeks.  Tr. 407.  He also referred Plaintiff for physical therapy.  Tr. 407.

From July 22, 2008, through August 29, 2008, Plaintiff received physical therapy at Jones Physical Therapy, PLC.  Tr. 364-385.  Plaintiff presented with decreased range of motion in his left knee and ankle, and pain in his left hip, knee, and ankle.  Tr. 364.  During physical therapy, Plaintiff complained of medial and lateral knee pain due to screws protruding out of his knee.  Tr. 371-372.  On August 8, 2008, Plaintiff was upgraded to 50% weight bearing and was fitted for a hinged knee brace.  Tr. 373.  On August 11, 2008, Sam Wilson, a licensed physical therapist, noted that Plaintiff had decreased swelling and pain in his left knee and was progressing toward his goals.  Tr. 374.  On

August 21, 2008, Plaintiff was ambulating with better gait and was using a straight cane with partial weight-bearing. Tr. 379. Plaintiff was discharged from physical therapy on August 29, 2008. Tr. 382-383.

X-rays of Plaintiff's left femur, dated August 7, 2008, revealed some open spaces, but good positioning and healing. Tr. 414. Plaintiff's left ankle fracture appeared to be healing nicely, with good hardware positioning and no evidence of loosening. Tr. 414. Dr. Seagrave noted that Plaintiff's nondisplaced fractures of his left acetabulum and right tibial plateau appeared healed and were asymptomatic. Tr. 405. He instructed Plaintiff to progress to partial weight-bearing with no more than 50% of his weight. Tr. 405.

At his three-month follow-up appointment, Plaintiff reported weight-bearing with crutches and was generally doing well, except he noted pain over a palpable screw head in the distal femur. Tr. 236-237. On September 18, 2008, Dr. Seagrave removed a painful interlocking screw from Plaintiff's left distal femur. Tr. 235, 412. At a follow-up appointment on September 25, 2008, Dr. Seagrave noted that Plaintiff's fractures appeared to be completely or almost completely healed. Tr. 403. Additionally, Plaintiff stated he was doing much better since screw removal and had not experienced any instability symptoms. Tr. 403.

Plaintiff resumed physical therapy from October 3, 2008, through November 3, 2008. Tr. 386-401. Plaintiff reported good pain relief following screw removal, but had significant swelling in his left knee. Tr. 390. By October 15, 2008, Plaintiff had better movement in his left knee and decreased swelling. Tr. 393. By October 31, 2008, Plaintiff demonstrated good increase in overall strength and range of motion in his left knee. Tr. 400. As such, he was discharged from physical therapy with good results. Tr. 400.

B. <u>Cornerstone Medical Clinic</u>

Plaintiff received routine treatment from Steve Shrum, M.D., at Cornerstone Clinic. Tr. 270-329. On July 14, 2008, Plaintiff reported experiencing depression for the last month as well as leg pain. Tr. 278. Dr. Shrum prescribed Hydrocodone-Acetaminophen for pain, and Celexa and Chlordiazepoxide for anxiety. Tr. 279. He also completed a certification form for the temporary issuance of a special license plate, stating Plaintiff could not walk 100 feet without stopping to rest and could not walk without the use of assistive devices. Tr. 290. On September 15, 2008, Plaintiff stated he had no complaints and was feeling much better since he was able to walk. Tr. 273. At the time, Plaintiff's medications included Exforge, Toprol XL, and Hydrocodone-Acetaminophen. Tr. 274. Dr. Shrum added Chlordiazepoxide for episodic drinking behavior and Celexa for anxiety. Tr. 274.

C. <u>November 23, 2008 Accident</u>

On November 23, 2008, Plaintiff fell over with his scooter and suffered a midshaft tibial fracture with butterfly fragment right above the hardware on his left distal tibia. Tr. 418-431, 433-443, 504-513. Subsequently, on November 24, 2008, Christopher Reeves, D.O., surgically removed Plaintiff's previous hardware and placed an intramedullary rod. Tr. 428-430. On December 3, 2008, Dr. Reeves noted that Plaintiff was doing very well and had good range of motion. Tr. 431. He instructed Plaintiff to continue with partial weight-bearing. Tr. 431. On January 6, 2009, Dr. Reeves noted that Plaintiff had greater than 105 degrees flexion and full extension. Tr. 418. Dr. Reeves instructed Plaintiff to continue toe touch weight-bearing and then he could advance to partial weight-bearing. Tr. 418. By February 10, 2009, Plaintiff had stable range of motion and was weight-bearing as tolerated. Tr. 445. Dr. Reeves noted that Plaintiff could hopefully be released back to

work in six weeks. Tr. 445.

In March 2009, Plaintiff was at full weight-bearing with crutch assistance, but reported pain and severe swelling. Tr. 458. X-rays revealed a well-healed left tibial fracture, but continued soft tissue traumatic injury. Tr. 458. Dr. Reeves recommended continued advance weight-bearing and noted that Plaintiff would likely be unable to return to work for another three to four months. Tr. 458.

On May 20, 2009, Plaintiff reported problems with swelling. Tr. 540-541. On examination, Plaintiff had full range of motion in his knee, "a 2+ Lachman's of the knee from a previous injury, but has a nice snappy endpoint," and was stable to varus/valgus load. Tr. 540. Dr. Reeves instructed Plaintiff to use compression stockings to help control swelling. Tr. 540. Otherwise, he stated Plaintiff could weight-bear as tolerated and return to full duties at work. Tr. 540.

D. October 24, 2009 Accident

On October 24, 2009, Plaintiff was admitted to North Arkansas Regional Medical Center after he was involved in a third motorcycle accident. Tr. 514-539. He was subsequently transferred to CoxHealth in Springfield, Missouri. Tr. 544-571. Plaintiff sustained several injuries, including left zygomatic, orbital, and anterior maxillary fractures. Tr. 526, 528-529. A CT of Plaintiff's brain revealed a large subdural hematoma on the left. Tr. 526, 530-531, 565-566. As a result, Plaintiff underwent a craniotomy to evacuate the left subdural hematoma, which he tolerated well. Tr. 493-494, 545, 559-560. A follow-up CT of Plaintiff's head without contrast, performed on November 3, 2009, revealed a residual left subdural hematoma with mild mass effect, decreased in size from October 2009. Tr. 500-501, 544. Thomas Briggs, M.D., noted marked improvement in Plaintiff's subdural hematoma with improving residual. Tr. 502.

E.  <u>Shannon Brownfield, M.D.</u>

At his attorney's request, Plaintiff saw Shannon Brownfield, M.D., for a one-time consultative evaluation. Tr. 572-574. On January 10, 2010, Dr. Brownfield completed a Residual Functional Capacity ("RFC") Questionnaire, in which she noted Plaintiff's history of severe leg injuries and determined he would need to elevate his left leg to chest level or higher while sitting. Tr. 572-574. She found Plaintiff could occasionally lift less than ten pounds. Tr. 574. Dr. Brownfield found that Plaintiff could sit continuously for thirty minutes, but must walk around for fifteen minutes before returning to a seated position. Tr. 572. Further, she determined Plaintiff would need to lie down or recline for one to two hours after standing or walking and could only stand or walk for a total of less than one hour in an eight-hour workday. Tr. 573. Dr. Brownfield noted that Plaintiff would require additional rest periods due to pain and swelling and would likely miss more than four workdays per month. Tr. 573-574. Additionally, she noted that Plaintiff's pain would frequently interfere with his attention and concentration. Tr. 574.

**III.   Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it

is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where he is able to perform substantial gainful activity. *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir.

2008); *see* 42 U.S.C. § 423(f)(1). This "medical improvement" standard[1] requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits. In determining whether a claimant's disability has ceased, the Commissioner applies a sequential analysis involving up to eight steps: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment; (3) whether there has been medical improvement; (4) if there has been medical improvement, whether it is related to the claimant's ability to work; (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies; (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe; (7) if the current impairment or combination of impairments is severe, whether the claimant has the RFC to perform any of his past relevant work activity; and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work. *Delph,* 538 F.3d at 945-46; *see* 20 C.F.R. § 404.1594(f)).

### IV.    ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since June 4, 2008, the alleged onset date. Tr. 14. At step two, the ALJ found Plaintiff suffered from sequelae of two prior tibia and/or fibular fractures and alcohol abuse and/or dependence, both of

---

[1] The regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Delph v. Astrue*, 538 F.3d at 947; 20 C.F.R. § 416.994(b)(1)(i).

which were considered severe impairments under the Act. Tr. 14. At step three, she determined that, from June 4, 2008, through June 5, 2009, the period during which Plaintiff was disabled, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 14.

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he could only occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, kneel, crouch, and crawl, and push/pull with his left lower extremity. Tr. 14-16. With these limitations, the ALJ found Plaintiff could not perform his past relevant work. Tr. 16. The ALJ further determined that Medical-Vocational Rule 201.14 directed a finding of "disabled."[2] Tr. 17. Thus, the ALJ found that there were no jobs from June 4, 2008, through June 5, 2009, that Plaintiff could have performed, considering his age, education, work experience, and RFC. Tr. 17.

Beginning on June 5, 2009, however, the ALJ found that Plaintiff experienced "medical improvement," at which time his disability ended. Tr. 17-18. She determined that, beginning June 5, 2009, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could only occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, kneel, crouch, and crawl, and push/pull with his left lower extremity. Tr. 18-20. The ALJ further found that Plaintiff's medical improvement was related to his ability to work, and he was capable of performing his past relevant work as a battery charger. Tr. 20, 42-44, 59-65. Thus, the ALJ concluded that Plaintiff's disability ended on June 5, 2009. Tr. 20-21.

---

[2] *See* 20 C.F.R. pt. 404, subpt. P, app. 2

## V.     Discussion

On appeal, Plaintiff contends the ALJ erred in determining Plaintiff experienced medical improvement and had the RFC to perform light work beginning June 5, 2009.  *See* Pl.'s Br. 3-10. For the following reasons, the undersigned finds that substantial evidence does not support the ALJ's decision.

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

At issue is the ALJ's characterization of Dr. Reeves's May 20, 2009 notation that Plaintiff could weight-bear/perform activities as tolerated and return to full duties at work.  Tr. 540.  Plaintiff argues that Dr. Reeves's notation does not automatically imply that he could perform the requirements of battery charger, especially given the instruction to weight-bear and perform other activities "as tolerated."  *See* Pl.'s Br. 3-9.  The Commissioner responds that Plaintiff's argument is speculative and ignores the fact that Dr. Reeves acknowledged that Plaintiff's fractures were healed.  *See* Def.'s Br. 5-6.

After considering the evidence of record, the undersigned cannot conclude that substantial evidence supports the ALJ's decision. Plaintiff's past work as a battery charger was characterized by the vocational expert as light, semiskilled work.[3] Tr. 60. Although Plaintiff's fractures were healed and Dr. Reeves stated Plaintiff could return to full duties at work, he also cautioned Plaintiff to continue to weight-bear and perform activities "as tolerated." Tr. 540. Thus, his statement is ambiguous as to the amount of weight-bearing Plaintiff could perform in a typical eight-hour workday. In the case at bar, Plaintiff's ability to stand and/or walk for extended periods of time is vital to his disability determination.[4] Given the severity of Plaintiff's multiple fractures and the fact that Medical-Vocational Rule 201.14 would direct a finding of disabled if Plaintiff were limited to sedentary work, the ALJ should have sought further clarification from Dr. Reeves concerning the *types* of work Plaintiff could perform as of June 5, 2009. *Smith v. Barnhart,* 435 F.3d 926, 930 (8th Cir. 2006) (ALJ has duty to seek clarification from treating physicians if a crucial issue is undeveloped or underdeveloped).

On remand, the ALJ should seek clarification from Dr. Reeves concerning Plaintiff's ability to stand and/or walk for extended periods of time as of June 5, 2009. If Dr. Reeves is unavailable for any reason, the ALJ should send Plaintiff for a consultative examination to determine the full extent of his physical limitations and how they affect his ability to perform the standing and walking requirements of a limited range of light work.

---

[3] Light work involves lifting up to twenty pounds, with frequent lifting and carrying of objects weighing ten pounds. Light work also involves a good deal of standing and walking, or pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[4] At the administrative hearing, the vocational expert testified that if Plaintiff required the use of a cane to balance while standing, it would eliminate all jobs except for a small percentage of cashier jobs, which would be performed at the sedentary level. Tr. 65.

The court notes that the ALJ dismissed Dr. Brownfield's RFC Assessment. Tr. 19-20. Dr. Brownfield was a one-time examining physician. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir. 1999) ("[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence."). She assigned severe limitations regarding Plaintiff's ability to stand and walk during an eight-hour workday. Tr. 573. However, Dr. Brownfield did not attach objective findings to support her report, which limited the value of her opinion. On remand, any consultative evaluation ordered by the ALJ should contain specific objective findings regarding Plaintiff's exertional limitations.

## VI.     Conclusion

Based on the foregoing, the undersigned recommends reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have <u>fourteen</u> days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 13th day of June 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE